UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ZOILO TAVERAS,

Defendant.

20 Cr. 240 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves a pretrial motion to dismiss an indictment.  On March 26, 2020, defendant Zoilo Taveras was indicted on one count of illegal reentry after having been removed from the United States following a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2).  Dkt. 5 ("Indictment").  The removal order on which the Indictment was based had been issued by an immigration court in 2000.  Taveras now moves to dismiss the Indictment under Federal Rule of Criminal Procedure 12, on the grounds that the immigration court that ordered his removal lacked jurisdiction to do so.  For the reasons that follow, the Court denies the motion to dismiss.

## I.      Background[1]

### A.      Events Leading to Taveras's Removal

Taveras, a citizen of the Dominican Republic, first came to the United States in or about

1985.  Def. Mem. at 2.  In 1991, he became a lawful permanent resident.  *Id.*

In 1996, Taveras was indicted in this District for conspiracy to possess with intent to

distribute cocaine base (crack cocaine), in violation of 21 U.S.C. § 846, and for maintaining an

establishment to store and distribute cocaine base, in violation of 21 U.S.C. § 856 and 18 U.S.C.

§ 2.  Opp'n at 4–5.  Taveras pled guilty to both counts.  On January 19, 1999, he was sentenced

principally to a term of 60 months' imprisonment.  *Id.* at 3–4; Dkt. 24-3, Ex. D ("Judgment").

In 2000, during Taveras's incarceration, United States immigration-enforcement officials

interviewed him and found him a deportable non-citizen.  Opp'n at 5.  On July 18, 2000, an

immigration-enforcement officer signed a Form I-862, captioned "Notice to Appear" ("NTA").

It stated that Taveras was removable from the United States under INA § 237(a)(2)(A)(iii),

(B)(i), on the basis of his conviction for narcotics conspiracy.    Def. Mem. at 3; Dkt. 24-3, Ex. B

("NTA").

Salient here in light of Taveras's motion to dismiss, the spaces on the NTA for the

immigration court's address, and the hearing's date and time were not filled in.  *Id.*  Instead, the

NTA completed these spaces with capitalized letters, so as to state that Taveras was ordered "to

appear before an Immigration Judge of the United States Department of Justice at: TO BE

---

[1] The Court draws the facts in this decision principally from the Complaint, Dkt. 1
("Complaint"); the Indictment; Taveras's motion to dismiss, Dkt. 24 ("Def. Mem.") and attached
exhibits; the Government's opposition, Dkt. 25 ("Opp'n"); the transcript of Taveras's removal
hearing, Dkt. 29-1 ("Hearing Tr."); and the transcript of argument on the motion to dismiss, held
November 5, 2020, Dkt. 31 ("Arg. Tr.").

CALENDARED AT A LATER DATE . . . to show why you should not be removed from the United States." NTA. A certificate of service attached to the NTA states that, on July 20, 2000, the NTA was served on Taveras in person, and that Taveras acknowledged its receipt. *Id.*

In October 2000, ICE took custody of Taveras and served him with a Notice of Custody Determination. It stated that ICE would detain Taveras during the pendency of his removal proceedings. Def. Mem. at 3. Taveras was then transferred to the Federal Detention Center in Oakdale, Louisiana ("FDC Oakdale"). *Id.*

On October 27, 2000, ICE provided a notice to the Executive Office for Immigration Review stating that Taveras was in custody at FDC Oakdale, that the "[c]harging document will be filed with the OIJ's office in Oakdale, LA," and that Taveras had been given a copy of the notice "for notification of jurisdiction/ commencement of proceedings as required per CFR 3.14." Dkt. 24-3, Ex. G (the "October Notice"); Def. Mem. at 4. The record does not establish whether Taveras received the October Notice, which does not contain a certification of service substantiating its service upon Taveras.

On November 9, 2000, the Executive Office of Immigration Review issued a "Notice of Hearing in Removal Proceedings." Dkt. 24-3, Ex. H (the "November Hearing Notice"). It stated that Taveras's removal hearing in immigration court would take place at 1:00 p.m. on November 20, 2000, at 1900 E. Whatley Road, Oakdale, LA 71463. *Id.* The November Hearing Notice was mailed to Taveras and to counsel for ICE. *Id.*; Def. Mem. at 4. On November 13, 2000, the November Hearing Notice was stamped as received at FDC Oakdale. November Hearing Notice. At the bottom of the notice is a certificate of service stating that the November Hearing Notice had been served on the alien (Taveras) by mail on November 9, 2000. *Id.*

### B.      Taveras's Removal Hearing

On November 20, 2000, Immigration Judge John Duck, Jr. conducted the removal

hearing, at the time and place identified in the November Hearing Notice.  Taveras appeared *pro*

*se*.  He conceded his removability as charged, based on his narcotics-conspiracy conviction.  Def.

Mem. at 4.  Taveras was notified of his "right to appeal [the removal] decision to a Superior

Court in Washington D.C. or in the Federal Courts."  Hearing Tr. at 5.  Asked at the hearing's

end whether he wished to appeal, Taveras stated: "No, I do not wish to appeal."  *Id.* at 8.

The same day, Judge Duck issued an order of removal.  It stated that an appeal had been

waived.  Dkt. 24-3, Ex. I; Def. Mem. at 4.  Taveras was then deported.  Def. Mem. at 4.

### C.      Taveras's Reentry and Apprehension

At some later point, Taveras returned to the United States.  Opp'n at 8.  In February

2020, the New York Joint Criminal Alien Removal Task Force encountered Taveras at his

residence in the Bronx, New York.  Indictment.  On February 28, 2020, Taveras was arrested on

a complaint charging him with illegal reentry.

### D.      Procedural History

On March 26, 2020, the Indictment charging Taveras with illegal reentry in violation of 8

U.S.C. § 1326 was returned.

On September 11, 2020, Taveras moved to dismiss the Indictment, arguing that the

immigration court that ordered his removal in November 2000 had lacked jurisdiction to do so.

Specifically, Taveras argued, the initial NTA had been deficient because it had not specified the

time, place, and date of his immigration hearing.  This, Taveras argued, had left the immigration

court without jurisdiction to order his removal, making the resulting order of removal a legal

nullity.  Accordingly, Taveras argued, the Government's evidence could not establish, as

required for conviction under § 1326, that he had been "removed."  Def. Mem. at 1.

4

On October 9, 2002, the Government filed an opposition.  It argued that the absence of the time, date, and place information in the initial NTA did not mean that jurisdiction was lacking for the removal hearing because the later notice served on Taveras—the November Hearing Notice—supplied that information in advance of the hearing.  Opp'n at 3.  Thus, while the NTA had been inadequate to supply jurisdiction, the November Hearing Notice cured the deficiency.  *Id.*  Separately, the Government argued, Taveras's motion was procedurally defective because Taveras had failed to show that he had exhausted his administrative remedies or that he had been deprived of the opportunity for judicial review, as required under 8 U.S.C. § 1326(d) to challenge a deportation order in a prosecution under 8 U.S.C. § 1326(a).  *Id.* at 4.

## II.    Applicable Legal Standards

"A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged."  *United States v. Smith*, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014) (quotations omitted).  However, insofar as Rule 12(b)(3)(B) permits dismissal of indictments for discrete reasons including failure to state an offense, "[a] charge in an indictment is insufficient and must be dismissed when it does not describe conduct that is a violation of the criminal statute charged."  *Id.* (citations omitted).

An element of the offense of illegal reentry after deportation or removal in violation of 8 U.S.C. § 1326 is that the defendant was previously deported in such a manner that complied with due process.  *See United States v. Paredes-Batista*, 140 F.3d 367, 376 (2d Cir. 1998) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 834–35 & n.9 (1987)).  Therefore, "[a]n alien can defend against such a charge by challenging the validity of the deportation order upon which the charge is predicated."  *United States v. Copeland*, 376 F.3d 61, 66 (2d Cir. 2004); *see*

*Mendoza-Lopez*, 481 U.S. at 837 ("If the [re-entry] statute envisions that a court may impose a criminal penalty for reentry after *any* deportation, regardless of how violative of the rights of the alien the deportation proceeding may have been, the statute does not comport with the constitutional requirement of due process.").

### III.    Discussion

The Court first considers Taveras's claim that the immigration court that ordered his removal in 2000 lacked jurisdiction to do so, on account of a defective NTA.  The Court then considers the Government's argument that, regardless, Taveras has not met the requirements that 8 U.S.C. § 1326(d) sets for collaterally challenging, in a prosecution under 8 U.S.C. § 1326(a), a removal order.

### A.    Did the Immigration Court Have Jurisdiction Over Taveras's Removal?

Taveras argues that the missing time, place, and date information on the initial NTA deprived the immigration court that ordered his removal of jurisdiction.

The Court first briefly summarizes the statutes and regulations bearing on the interplay between an NTA and existence of jurisdiction.

Section 1229a(a)(1) of Title 8 provides that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien."  Such removal proceedings are commenced by the filing of an NTA.  *Tablie v. Gonzales*, 471 F.3d 60, 62 (2d Cir. 2006).  Section 1229(a), entitled "[i]nitiation of removal proceedings," describes the written notice that must be given to an alien.  It requires the NTA to contain, among other information, "[t]he time and place at which the proceedings will be held."  8 U.S.C. § 1229(a)(1). However, as the Second Circuit observed earlier this year in its foundational decision on the subject, *Banegas Gomez v. Barr*, "[t]he statutory text does not . . . explain when or how jurisdiction vests with the immigration judge—or, more specifically, denote which of the several

requirements for NTAs listed in § 1229(a)(1) are jurisdictional."  922 F.3d 101, 110 (2d Cir. 2019) (quoting *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 313 (6th Cir. 2018)).  Indeed, as the Circuit noted, "Section 1229 in fact 'says nothing about the Immigration Court's jurisdiction.'" *Id.* at 110–11 (quoting *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019)).

As the Circuit recognized in *Banegas Gomez*, the regulations promulgated under Section 1229(a) governing removal proceedings "*do* address when jurisdiction vests in the Immigration Court."  922 F.3d at 111 (emphasis in original).  These state that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."  8 C.F.R. § 1003.14(a).  They define a "charging document" as "the written instrument which initiates a proceeding before an Immigration Judge," including an NTA.  8 C.F.R. § 1003.13.

Two regulatory provisions address the required contents of an NTA.  The first is 8 C.F.R. § 1003.15, entitled "Contents of the order to show cause and notice to appear and notification of change of address."  Subsection (a)—*i.e.*, § 1003.15(a)—states that in its Order to Show Cause, the Immigration and Naturalization Service (the "Service")[2] is to list information regarding the alien (*e.g.*, name, address, alien registration number, nationality and citizenship) which it is to provide to the Executive Office for Immigration Review.  It states that the omission of any item listed therein "shall not provide the alien with any substantive or procedural rights."  Subsection (b) states that "the Order to Show Cause and Notice to Appear must also include the following information":

---

[2] Effective March 1, 2003, the statutory reference to the Immigration and Naturalization Service has meant the offices of the Department of Homeland Security, to which the functions of the Service were transferred pursuant to the Homeland Security Act of 2002.  *See* Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

(1) The nature of the proceedings against the alien;

(2) The legal authority under which the proceedings are conducted;

(3) The acts or conduct alleged to be in violation of law;

(4) The charges against the alien and the statutory provisions alleged to have been violated;

(5) Notice that the alien may be represented, at no cost to the government, by counsel or other representative authorized to appear pursuant to 8 CFR 1292.1;

(6) **The address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear**; and

(7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an in absentia hearing in accordance with § 1003.26.

8 C.F.R. § 1003.15(b) (emphasis added).  Subsection (b) is silent as to the consequences for failing to include required information on an NTA.  Finally, subsection (c), entitled "Contents of the Notice to Appear for removal proceedings," sets out "administrative information" about the alien that the Service is to provide to the Immigration Court, including name, address, alien registration number, nationality and citizenship, and language.  Subsection (c) states that the "[f]ailure to provide any of these items shall not be construed as affording the alien any substantive or procedural rights."  *Id.* § 1003.15(c).

Second, 8 C.F.R. § 1003.18, entitled "Scheduling of cases," states that:

(a) The Immigration Court shall be responsible for scheduling cases and providing notice to the government and the alien of the time, place, and date of hearings.

(b) In removal proceedings pursuant to section 240 of the Act, **the Service shall provide in the Notice to Appear, the time, place and date of the initial removal hearing, where practicable**. **If that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing.** In the case of any change or postponement in the time and place of such proceeding, the Immigration Court shall provide

written notice to the alien specifying the new time and place of the proceeding and the consequences under section 240(b)(5) of the Act of failing, except under exceptional circumstances as defined in section 240(e)(1) of the Act, to attend such proceeding. No such notice shall be required for an alien not in detention if the alien has failed to provide the address required in section 239(a)(1)(F) of the Act.

8 C.F.R. § 1003.18 (emphasis added).

In *Banegas Gomez*, the Second Circuit was presented with an alien's claim that the NTA he had received did not vest jurisdiction in the Immigration Court, because it had not set out the time and date of his initial hearing. The alien had, however, later received a second notice that specified the time and date. 922 F.3d at 110, 112. Analyzing the statutory and regulatory framework, the Circuit found that the immigration judge ("IJ") had jurisdiction over the removal hearing. In claiming the contrary, the alien relied on *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), which had considered whether service of an NTA that did not recite the time or place of the initial removal hearing triggered the Immigration and Nationality Act's "stop-time" rule for cancellation of removal. *Id.* at 2113–14; *see also* 8 U.S.C. § 1229b(d)(1). But the Circuit distinguished *Pereira*. *Pereira*, the Circuit noted, had held that because the statutory stop time rule "explicitly provides that it is triggered by service of an NTA 'under section 1229(a),' which itself specifies that an NTA state the time and place at which proceedings will be held, the INA unambiguously requires an NTA to include such information to trigger the stop time rule and cut off an alien's accrual of physical presence or residence for the purposes of qualifying for cancellation." *Banegas Gomez*, 922 F.3d at 110 (quoting *Pereira*, 138 S. Ct. at 2114) (citations omitted). *Pereira*'s holding thus was "based on the intersection of *two* statutory provisions, one of which[] address[ed] the stop time rule." *Id.* at 111 (emphasis in original). But, the Circuit reasoned, *Pereira* was "not relevant to Banegas Gomez's proceeding at all" because "no such statutory glue bonds the Immigration Court's jurisdiction to § 1229(a)'s requirements." *Id.*

Rather, "*Pereira*'s self-described disposition of this 'narrow question'" is limited to the relation between the stop-time rule and § 1229(a)'s time-and-place requirements, and does not "void *jurisdiction* in cases in which an NTA omits a hearing time or place." *Id.* (emphasis in original).

The Circuit then addressed, independent of *Pereira*, whether there had been jurisdiction over Banegas Gomez's removal hearing.  The Circuit noted although Section 1229 "says nothing about the Immigration Court's jurisdiction," the regulations promulgated pursuant to it state the requirements for jurisdiction to vest.  *Id.* at 110–11 (quotations omitted); *see id.* at 111 ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." (quoting 8 C.F.R. § 1003.14(a))).  Critically, the Circuit noted, "the agency regulations do not refer to § 1229(a)(1)'s requirements when defining what an NTA is for purposes of vesting jurisdiction in the Immigration Court," but instead define an NTA as an example of a "charging document" that can "initiate[] a proceeding before an Immigration Judge."  *Id.* (quoting 8 C.F.R. § 1003.13).  And the regulations defining jurisdiction do not categorically require an NTA to "contain the time, date, and place of a hearing."  *Id.*  Instead, they require the NTA to do so "only '*where practicable*,'" and "direct the Immigration Court to schedule the hearing and provide notice when the NTA does not contain it in the first instance."  *See id.* (quoting 8 C.F.R. § 1003.18(b) (emphasis in original)).

Accordingly, the Circuit held, jurisdiction had existed over Banegas Gomez's removal hearing.  Even though the NTA had not stated the time and date of his initial hearing, Banegas Gomez had later received a hearing notice stating the time and date.  That latter notice vested the immigration court with jurisdiction.  *Id.* at 112.

To the extent that Taveras claims that jurisdiction was lacking over his removal hearing because the initial NTA did not include the date and time of his hearing and therefore did not qualify as a "charging document" under 8 C.F.R. § 1003.13 or vest the immigration court with jurisdiction under 8 C.F.R. § 1003.14(a), Def. Mem. at 8, *Banegas Gomez* forecloses his claim. Like the alien in *Banegas Gomez*, Taveras relies on *Pereira*.  But, as noted, the Second Circuit in *Banegas Gomez* distinguished *Pereira* on the ground that it turned on a separate statutory stop-time provision that is not implicated by a challenge to jurisdiction over removal proceedings. Although Banegas Gomez's challenge arose in an appeal from a removal order whereas Taveras's claim arises from a motion to dismiss a criminal charge of illegal reentry following removal, the jurisdictional question—whether the Immigration Court had jurisdiction to order removal—is identical.  And *Banegas Gomez*'s key holding—that the later hearing notice that supplied the date and time missing from the initial NTA was sufficient to vest jurisdiction in the immigration court—is also squarely on point.  *See Banegas Gomez*, 922 F.3d at 112 ("[A]n NTA that omits information regarding the time and date of the initial removal hearing is nevertheless adequate to vest jurisdiction in the Immigration Court, at least so long as a notice of hearing specifying this information is later sent to the alien.").  The November Hearing Notice undisputedly gave Taveras the previously lacking date and time information.

Unable to distinguish *Banegas Gomez* as to the missing date and time of the removal hearing, Taveras is ultimately forced to argue that the Circuit's decision was in error.  Def. Mem. at 15–17.  This Court, however, lacks authority to stand in review of that precedent.  In any event, Taveras does not offer good reason to revisit that well-reasoned decision.[3]

---

[3] Taveras makes one argument that he claims the Circuit did not consider in *Banegas Gomez*.  He argues that legislative history demonstrates that the qualifying language in 8 C.F.R. § 1003.18(a)

Taveras next argues that the fact that his initial NTA did not list the immigration court's address separately deprived the court of jurisdiction.  Notwithstanding the parallel treatment in 8 C.F.R. § 1003.18(b) of the time, place, and date of the hearing, Taveras argues that a missing address is legally distinct from a missing time or date, because notice of the court's address—unlike the hearing's date and time—is separately required by 8 C.F.R. § 1003.15(b)(6), which requires that the order to show cause and NTA set out "[t]he address of the Immigration Court where the Service will file the Order to Show Cause and Notice to Appear."  Taveras argues that the absence of an address in an initial NTA is fatal as to jurisdiction, because unlike § 1003.18(b), § 1003.15(b)(6) does not provide for a curative later notice where it had not been "practicable" to include the address on an NTA.

That issue was not resolved in *Banegas Gomez* because Banegas Gomez's NTA included the court's address.  But the logic of that decision—that a later notice sent to the alien which, as authorized by § 1003.18(b), supplies the missing logistical data point regarding the upcoming hearing is adequate to vest jurisdiction in the immigration court—equally applies.  Critically,

---

on which the Circuit relied—that date, place, and time information is to be supplied on the initial NTA "where practicable"—reveal that the "impracticality" exception to the duty to supply such information was intended to apply only where there were "electronic failures of the system." Def. Mem. at 13-14.  But the regulation's text does not say that.  And, as Taveras concedes, the records that survive of his removal hearing 20 years ago would not enable him to demonstrate that, as of the initial NTA, it had in fact been "practicable" for the INS to know and include the date, time, and place of the forthcoming hearing.  *See* Arg. Tr. at 20 ("I also agree . . . that there's no record that it was practical.").  On the contrary, as the Government notes, the NTA statement that the hearing had yet to be calendared implies the opposite.  *See* NTA (hearing was "to be calendared at a later date").  Taveras's new theory, even if the Court were at liberty to reconsider the holding in *Banegas Gomez*, would not warrant a different outcome, or justify dismissal of the Indictment.  *See United States v. Bout,* 731 F.3d 233, 240 (2d Cir. 2013) ("It bears recalling that [the Second Circuit has] consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  (emphasis and internal quotation marks omitted)).

§ 1003.18(b) twice addresses the hearing's "place" in tandem with its time and date, stating that the NTA is to state "the *time, place and date* of the initial removal hearing, where practicable," but that, if that information is not supplied there, "the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the *time, place, and date* of hearing." *Id.* (emphasis added).  Section 1003.18(b)'s explicit statement that an NTA's omission of "place" information can thus be cured would be nullified were § 1003.15(b)(6)'s silence as to the remedy for failure to include the immigration court's address on the initial NTA held to mean that such failure incurably prevented jurisdiction from vesting.  Taveras does not point to any legislative or regulatory history supporting this improbable outcome—that this singular lapse was intended to checkmate agency jurisdiction.  And, factually, in Taveras's case, it is undisputed that the November Hearing Notice served on Taveras at FDC Oakdale supplied the missing information.  It notified Taveras of the place (as well as the time and date) of his removal hearing, stating that the hearing would be held at an Immigration Court "on Nov. 20, 2000 at 1 p.m. at 1900 E. Whatley Road, Oakdale, LA 71463."

The limited precedents on which Taveras relies in arguing that the NTA's omission of the hearing address is dispositive as to the court's jurisdiction are inapposite, unpersuasive, and/or repudiated.  Taveras relies primarily on Judge Garaufis's decision in *United States v. Benitez-Dominguez*, 440 F. Supp. 3d 202, 211 (E.D.N.Y. 2020), *appeal withdrawn*, No. 20-1050, 2020 WL 3422359 (2d Cir. Apr. 9, 2020).  That decision dismissed an indictment charging illegal reentry, because the NTA had not included the time, date, or address of the removal hearing.  Decisively, the alien in *Benitez-Dominguez* had *never* thereafter been served with a notice of hearing remedying these deficits.  *Id.* at 210.  And, Judge Garaufis held, a later notice that the alien had received (and which contained the missing information) did not qualify as a notice of

hearing, because it was a different type of notice.  It was a "notice of change of address for immigration court," issued pursuant to 8 U.S.C. § 1229(a)(2)(A), which requires such a notice to be given to the alien "in the case of any change or postponement in the time and place of such proceedings." *Benitez-Dominguez,* 440 F. Supp. 3d at 211.  Judge Garaufis held that such a postponement notice—unlike the notice held effective in *Banegas Gomez*—could not cure the deficient NTA because it was merely a "letter that presumes the existence of valid NTA."  *Id.*  Judge Garaufis did, however, recognize that, had a second notice of hearing been properly served on the alien, it, under *Banegas Gomez*, could have cured the defect in the initial NTA.  *See Benitez-Dominguez,* 440 F. Supp. 3d at 210 ("Therefore, a subsequent notice of hearing was required, and, *because that subsequent notice was never provided*, the immigration court did not have the jurisdiction to order Mr. Benitez-Dominguez's removal." (emphasis added)).  *Benitez-Dominguez* is easily distinguished here because Taveras, unlike Benitez-Dominguez, undisputedly received a subsequent notice of hearing stating the date, time, and location of his removal hearing.

To be sure, Judge Garaufis in *Benitez-Dominguez* went on—in dicta—to state that, even if a later notice of hearing had been served so as to cure the absence of date and time information in the NTA, such a notice might have been incapable of curing the absence of an "address" in the NTA, depriving the immigration court of jurisdiction.  His basis for so concluding was that 8 C.F.R. § 1003.15(b), unlike 8 C.F.R. § 1003.18(b), does not expressly provide for a curative notice—it is silent on the point.  *See Benitez-Dominguez*, 440 F. Supp. 3d at 210 ("It strains credulity, then, to argue that compliance with § 1003.18(b) is necessary to vest jurisdiction, but compliance with § 1003.15(b) is not.").  For the reasons set out above, the Court finds that reasoning unpersuasive, including because such a holding would contradict—and make nugatory

—§ 1003.18(b) insofar as it explicitly provides for the omission from an NTA of the "place" of the hearing to be remedied by a later notice of hearing.

Taveras also relies on several district court decisions in the Ninth Circuit that found an immigration court to have lacked jurisdiction because the NTA had not recited the address of the immigration court at which the NTA would be filed, notwithstanding later notice to the alien of that address.  *See United States v. Ceja-Melchor*, 445 F. Supp. 3d 157, 163 (N.D. Cal. 2020); *United States v. Ramos-Urias*, No. 18 Cr. 00076 (JSW), 2019 WL 1567526, at *3 (N.D. Cal. Apr. 8, 2019) (cited in Def. Mem. at 10).  Those decisions, however, are no longer good law, as they were abrogated by the Ninth Circuit in *Aguilar Fermin v. Barr*, 958 F.3d 887 (9th Cir. 2020). The NTA in *Aguilar-Fermin* had not provided the time, place, or date of the hearing, but that information, as here, had been supplied by a second notice.  The Ninth Circuit, addressing "what is the remedy when the address is omitted from the NTA?," reasoned that § 1003.15(b)(6) and § 1003.18(b) should be read in conjunction.  *Id.* at 895.  On that question, the Ninth Circuit deferred to the Board of Immigration Appeals' construction of these regulations in *In re Rosales Vargas*, 27 I. & N. Dec. 745 (B.I.A. 2020), in which, the Ninth Circuit noted, the BIA "fully explained that § 1003.18(b) supplies the appropriate remedy: providing the alien and the government with the complete notice at a later time."  *Aguilar Fermin*, 958 F.3d at 895.  The Ninth Circuit concluded:  "Given that the regulations expressly state that the omission of an address from an NTA may be fixed by a later hearing notice, it is reasonable to construe the regulatory provisions about when jurisdiction vests as allowing the IJ to assert jurisdiction in such circumstances."  *Id.*  The Ninth Circuit's outcome is identical to this Court's, albeit reached there on the basis of *Auer* deference to the BIA rather than, as here, by recognizing that § 1003.18(b) explicitly approves such a remedy.  *Accord. Kohn v. Barr*, 813 F. App'x 623, 625

(2d Cir. 2020) (summary order) ("*Banegas Gomez* was not based on *Auer* deference to the BIA's interpretation; rather, we decided the case on the plain language of the statute and regulations, while noting that our conclusion was 'reinforced by the BIA's precedential opinion.'" (quoting *Banegas Gomez*, 922 F.3d at 111)).[4]

Taveras's final argument is that the NTA's failure to identify the immigration court in which the NTA had been filed deprived the court of jurisdiction. That argument turns on a separate regulation, 8 C.F.R. § 1003.14(a), which, in pertinent part, reads:

> Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service. *The charging document must include a certificate showing service on the opposing party pursuant to § 1003.32 which indicates the Immigration Court in which the charging document is filed*.

8 C.F.R. § 1003.14(a) (emphasis added). Taveras argues that even if the deficiency in 8 C.F.R. § 1003.15(b)(6) was remedied by the November Hearing Notice—which included a certificate of service—that notice did not satisfy § 1003.14(a)'s second sentence because "nothing on [the November Hearing Notice] says that this [notice was] provided to [Taveras] in order to fulfill the

---

[4] At argument, Taveras advanced a novel theory on this point. He argued that the "address" whose notice is required by § 1003.15(b)(6) differs from the "place" whose notice is required by § 1003.18. *See* Arg. Tr. at 10–14; 36–40. In this reading, "address" refers to the immigration court's street address, whereas "place" refers to the floor and courtroom at which the hearing was to be held. Thus, Taveras posits, even where it is impractical to identify the hearing's place as of the initial NTA, notice of the court's address must then be given, lest jurisdiction durably lack over the removal proceedings. Arg. Tr. at 10–12. Taveras does not cite any judicial precedent or legislative or regulatory history supporting this improbable theory. Pressed, Taveras's counsel at argument cited only the BIA decision in *Rosales Vargas* as ostensible support. *Id.* But that decision does not assist Taveras. Rather, the BIA held there that the "place" specified in § 1003.18 encompasses the "address" specified in § 1003.15. *See* 27 I. & N. Dec. at 754 n.9 ("[W]e understand the place of the hearing to encompass the address of the Immigration Court where the notice to appear is filed."). And, the BIA held, an NTA lacking an "address" can be remedied just as one lacking a "place," through a subsequent notice. *Id.*

requirement of the statute that [the alien] would be given the notice of address where the NTA was to be filed."  Arg. Tr. at 39–40.

Even assuming that compliance with § 1003.14(a)'s second sentence is required for an immigration court's jurisdiction to vest,[5] Taveras's argument, unsupported by any case law, is easily put aside.

The November Hearing Notice fully disclosed to Taveras the immigration court where his removal would be litigated.  It is captioned "Executive Office For Immigration Review— Immigration Court—Oakdale, LA."  It states that the hearing before the Immigration Court would be at "1900 E. Whatley Road[,] Oakdale, LA 71463."  It states that the address at which any motions or applications should be filed "with the Immigration Court" was the same Oakdale, LA address.  Thus, while Taveras is correct that the identity of the court hearing his case may be

---

[5] There is a substantial argument that, while service is of course required on the alien, compliance with § 1003.14's second sentence—requiring the charging document itself to contain a certificate showing such service—is not jurisdictional.  *Banegas Gomez* did not resolve that question.  It identified § 1003.14(a)'s first sentence as establishing when jurisdiction vests, but did not have occasion to consider the second.  *See* 922 F.3d at 111 (the regulations which "*do* address when jurisdiction vests in the Immigration Court . . . provide that '[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service" (citing 8 C.F.R. § 1003.14(a))).  And the Ninth Circuit, in *Aguilar*, dispatched a similar claim to Taveras's here, deferring to the BIA's holding on this point in *Rosales Vargas*.  The BIA there held that noncompliance with the § 1003.14 requirement that the charging document include "a certificate showing service on the opposing party . . . which indicates the Immigration Court in which the charging document is filed," did not deprive an immigration court of jurisdiction.  *Aguilar Fermin*, 958 F.3d at 895 (citing 27 I. & N. Dec. at 753).  The BIA explained that the second sentence "does not refer to jurisdiction" but is "a claim-processing rule."  27 I. & N. Dec. at 753; *see id.* (certification requirement "is one of a group of internal docketing rules, or procedural or venue provisions, that provide aliens with notice of the location of their hearings and facilitate communications with the court"); *see also, e.g.*, *United States v. Pando-Aucay*, No. 19 Cr. 125 (RMB), 2019 WL 6208561, at *7–8 (D.N.J. Nov. 21, 2019) (when charging document did not include "a certificate showing service," this omission bore upon "the second prong of § 1003.14, 'commencement of proceedings,' not to the vesting of jurisdiction").

useful information to the alien (*e.g.*, to the extent that circuit-specific precedents may bear on his removal), Arg. Tr. at 8, the November Hearing Notice identified that court.

Taveras, however, posits that 8 C.F.R. § 1003.14(a)'s second sentence mandates the disclosure of an item of information distinct from the identity of the court presiding over the removal hearing: the court where the charging document "has been filed."  Arg. Tr. at 8.  And viewing the filing location as a data point not revealed by the "time, place, and date" information which under 8 C.F.R. § 1003.18 may be remedied by a later notice, he argues, an NTA's failure to disclose the filing location is fatal to jurisdiction.  Taveras's argument fails because a charging document, by nature, is filed in the court where the case will be heard.  That—in the case of a criminal indictment brought by the Department of Justice, or a complaint by a federal agency enforcing its regulations against an alleged violator—is what initiates adversary proceedings in that court.  Taveras does not offer any reason to regard removal hearings as departing from that familiar paradigm.  In any event, even if a charging document initiating removal proceedings theoretically could be filed in a court other than the one where the proceedings would take place, Taveras does not offer any reason to believe that the charging documents in his case were filed other than with the Oakdale, Louisiana court revealed by the November Hearing Notice.[6]

Taveras thus has failed to show that the deficiencies in his initial NTA were not remedied by the November Hearing Notice.  The Court accordingly holds that the immigration court that ordered Taveras's removal had jurisdiction to do so, and denies Taveras's motion to dismiss.

---

[6] It is not clear whether Taveras faults that notice for not stating in *haec verba* that the act of filing the charging document occurred in the Oakdale court, as opposed to communicating the same by identifying that court as the one in which his case would be heard.  Regardless, Taveras does not point to any authority making use of that form of words a jurisdictional requirement.

**D.      Has Taveras Satisfied Section 1326(d)'s Threshold Requirements?**

The Government argues that Taveras's motion to dismiss must be denied for a separate reason:  Taveras does not satisfy the perquisites set forth in 8 U.S.C. § 1326(d) for challenging a deportation order issued under 8 U.S.C. § 1326(a).  The Government is correct.

In *United States v. Mendoza-Lopez*, 481 U.S. at 838–39, the Supreme Court held that an alien could collaterally challenge the validity of a deportation order when the order is being used to form the element of a criminal offense and the alien has been denied any possibility of judicial review.  *See United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002).  "Congress [then] effectively codified the holding in *Mendoza-Lopez*" through an amendment to 8 U.S.C. § 1326, which permitted an alien charged with illegal reentry under 8 U.S.C. § 1326(a) to challenge the underlying deportation order, provided that the alien satisfied certain requirements listed in § 1326(d).  *Id.*; *see United States v. Lopez*, 445 F.3d 90, 94 (2d Cir. 2006) (same).

Section 1326(d) reads:

**(d) Limitation on collateral attack on underlying deportation order**

In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that –

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C.A. § 1326(d).  The Second Circuit has held that Section 1326(d) "permits an alien charged with illegal reentry under 8 U.S.C. § 1326(a) to challenge the underlying deportation

19

order on which the illegal reentry charge is based" only when each of these requirements has been met.  *Lopez*, 445 F.3d at 94.

Taveras argues that he need not satisfy these criteria because his challenge to the order removing him asserts a lack of jurisdiction.  *See* Def. Mem. at 19 ("there simply *is* no removal order to collaterally attack: it is a nullity").  But § 1326(d)'s text is categorical.  It does not contain any exception for jurisdictional challenges to removal orders.  And Taveras's theory that collateral challenges to removal orders based on a claim of a lack of jurisdiction need not comply with § 1326(d) has been roundly rejected.  Taveras does not point to any circuit court that has so held, and a number have applied § 1326(d) to bar such challenges.  *See, e.g.*, *United States v. Pedroza-Rocha*, 933 F.3d 490, 498 (5th Cir. 2019) (rejecting argument that § 1326(d)'s limitation on collateral attacks does not apply to a removal order over which the issuing IJ assuredly lacked jurisdiction to issue); *United States v. Garcia-Galvan*, 777 F. App'x 921, 924 (10th Cir. 2019) (rejecting argument that defendant "is not required to meet 8 U.S.C. § 1326(d)'s collateral attack requirements because he is attacking the subject-matter jurisdiction of the immigration court" (quotations omitted)); *United States v. Amaya-Martinez*, 791 F. App'x 385, 387 (4th Cir. 2019) (rejecting argument that defendant "may collaterally attack his removal order without satisfying the criteria set forth in 8 U.S.C. § 1326(d) (2012) because entry of his removal order without proper jurisdiction was fundamentally unfair").  And while Taveras points to a single out-of-district decision supporting his thesis, district courts in this Circuit to address the issue have uniformly held that an alien challenging jurisdiction for a removal order must satisfy § 1326(d).  *Compare United States v. Maldonado*, No. 18 Cr. 308 (CBA), Dkt. 50 at 30 (E.D.N.Y. Feb. 11, 2019) (§ 1326(d) provides "the exclusive channel through which a defendant can challenge an underlying removal order"); *Benitez-Dominguez*, 440 F. Supp. 3d at 205–06

("to challenge the jurisdiction of the immigration court, [a defendant] must satisfy the § 1326(d) factors"); *United States v. Pszeniczny*, 384 F. Supp. 3d 353, 362 (E.D.N.Y. 2019) (same), *with United States v. Muniz-Sanchez*, 388 F. Supp. 3d 1284, 1288 (E.D. Wash. 2019) ("[T]he Court disregards the removal order that was issued ultra vires, and need not analyze whether Defendant may collaterally attack the underlying removal order under 8 U.S.C. § 1326(d).") (cited at Def. Mem. at 19). This Court holds, with the weight of authority, that an alien challenging a deportation order under § 1326(a) based on a claim that jurisdiction was lacking to issue that order must satisfy § 1326(d).

### 1. Exhaustion

Section 1326(d) requires, first, that the alien have exhausted the administrative remedies available for relief from the order. Taveras concedes that he did not exhaust his administrative remedies after his removal proceeding and that at the removal hearing, he instead waived his right to appeal the removal order. He argues, however, that that waiver is void because it was not knowing and intelligent.

That claim is belied by the transcript of Taveras's immigration hearing. It reflects that the immigration judge clearly explained to Taveras his right to appeal, and that Taveras chose to waive that right. Hearing Tr. at 5, 8. Taveras was initially told of his "right to appeal [the immigration judge's] decision to a Superior Court in Washington D.C. or in the Federal Courts"; Taveras stated that he understood that right. *Id.* at 5. Taveras was then asked whether he wished to appeal; he replied: "No, I do not wish to appeal." *Id.* at 8. That Taveras was *pro se* does not make his waiver other than knowing or intelligent. Taveras was also informed of his right to have an attorney present. He waived that, too. Hearing Tr. at 2–3. Taveras does not offer any

facts casting doubt on his capacity to understand, process, or intelligently respond to the questions the court put to him regarding an appeal.

At argument, Taveras argued that a waiver is not knowing and intelligent where the IJ does not affirmatively alert the alien to a potentially meritorious appellate claim. *See* Arg. Tr. at 15–16 (defense counsel arguing that an alien "doesn't knowingly and intelligently waive administrative review, and therefore judicial review if he or she doesn't understand the substantive problem in the removal proceedings"). Taveras's counsel points to three cases ostensibly so holding. But each addressed a situation far afield from that here. In each, the court either failed to advise the alien of his right to seek a discretionary waiver of deportation under § 212(c) of the former Immigration and Nationality Act, or inaccurately told the alien that he or she was ineligible for that discretionary relief. *See Copeland*, 376 F.3d at 66; *United States v. Calderon*, 391 F.3d 370, 373–74 (2d Cir. 2004); *United States v. Sosa*, 387 F.3d 131, 134–35 (2d Cir. 2004). Taveras does not make any such claim here.

The Second Circuit's analysis in *Copeland* underscores the distinction between such cases and this. At the time of *Copeland*, *Calderon*, and *Sosa*, "the right to a Section 212(c) hearing [was] well established and mandatory," and under governing regulations, an immigration judge was required to "inform an eligible alien of his or her right to a Section 212(c) hearing, 8 C.F.R. § 242.17(a) (removed 1998), and thereafter hold such a hearing, if requested." 376 F.3d at 72. Thus, an alien had an "established right to be informed of the possibility of such relief." *Id.* at 72–73. When an alien was not specifically so informed, "the administrative exhaustion requirement [wa]s excused because [the alien's] waiver of his right to an administrative appeal was not knowing and intelligent,' insofar as he 'was not informed of his right to apply for Section 212(c) relief.'" *Calderon*, 391 F.3d at 375 (quoting *Sosa*, 387 F.3d at 137).

There is, however, no analogous "established right to be informed of the possibility" that an NTA was deficient or that a post-hearing challenge to jurisdiction might be viable. Taveras does not cite any authority obliging an IJ to notify him of this possibility, or to issue-spot potential post-hearing collateral challenges.

This case, in fact, illustrates the practical wisdom behind § 1326's requirement that petitioners exhaust administrative remedies, including with respect to challenges based on an asserted lack of jurisdiction. The administrative exhaustion requirement's purpose "is to ensure that the agency has an opportunity to correct its errors and develop a full evidentiary record." *See Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 125 (2d Cir. 2007) (citing *Copeland*, 376 F.3d at 67, as standing for that proposition). The Court here has rejected as meritless Taveras's claim of a lack of jurisdiction. But had that claim not been foreclosed by surviving records (*e.g.*, the November Hearing Notice), resolving it might have required exploration of events 20 years ago. Yet records of such events may not exist years later. For example, as Taveras concedes, it is, realistically, lost to history whether it had been "practicable" for the initial NTA to include the date, place, and time of his hearing, thus obliging a reviewing court such as this to accept the NTA's statement implying that this data was as-yet unknown as of the date the NTA issued. *See* Arg. Tr. at 19–20. Similarly, the October Notice might have enhanced the case for jurisdiction had there been affirmative proof of its service on Taveras. A timely claim through administrative channels might have elucidated whether Taveras had been served with that notice. But Taveras's decision to forgo the administrative challenges available to him—beginning with his waiver of his right to appeal—prevented any such record from being developed.

Taveras thus fails to establish the first requirement of § 1326(d)—that before moving to dismiss the indictment, he exhausted all administrative remedies.

### 2.      Opportunity for judicial review

Section 1326(d) next inquires whether "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review."  Taveras fails to show that, either.  Where an alien's response to the requirement that he exhaust administrative remedies is to dispute that he knowing and intelligently waived his right to appeal, "there is some overlap between this and the prior § 1326(d) factor, [because] . . . '[w]here a waiver of the right to appeal is not knowing, an alien is deprived of the opportunity for judicial review.'"  *Benitez-Dominguez*, 440 F. Supp. 3d at 207 (quoting *Copeland*, 376 F.3d at 68 n.6) (second alternation in original).  On this prong of § 1326(d), Taveras reprises his argument that he did not knowingly and intelligently waive his right to appeal.  *See* Def. Mem. at 19–20 (quoting *Copeland*, 376 F.3d at 68 n.6 ("Where a waiver of the right to appeal [to the BIA] is not knowing, an alien is deprived of the opportunity for judicial review.")).  But, for the reasons above, Taveras has not demonstrated that his waiver of his appellate rights was other than knowing and intelligent.  He has, therefore, not established this prong, either.

### 3.      Fundamental unfairness

Section 1326's third required showing is that "the entry of the order was fundamentally unfair."  To so show, the alien must demonstrate "both a fundamental procedural error and prejudice resulting from the error."  *Lopez*, 445 F.3d at 100 (internal quotation marks omitted).  Prejudice requires a defendant to show that "absent the procedural errors, he would not have been removed."  *Fernandez-Antonia*, 278 F.3d at 159; *see also United States v. Fares*, 978 F.2d 52, 57 (2d Cir. 1992) (where "a fully informed exercise of the right of direct appeal would have yielded the alien no relief from deportation, the deportation order may be used to establish conclusively an element of a criminal offense"); *Copeland*, 376 F.3d at 73 ("Prejudice is shown where 'defects in the deportation proceedings may well have resulted in a deportation that would

24

not otherwise have occurred.'" (quoting *Fernandez-Antonia*, 278 F.3d at 159)); *United States v. Espinoza*, 442 F. Supp. 3d 596, 603 (S.D.N.Y. 2020) (explaining that to show prejudice there must be a "reasonable probability that, but for [the] . . . errors, the result of the proceeding would have been different.").

Taveras's sole argument, as to both unfairness and prejudice, is that he was deported after a proceeding that was unlawful for want of jurisdiction. Had the immigration judge recognized his lack of jurisdiction, Taveras argues, he would not have issued the removal order. Def. Mem. at 20. Thus, Taveras states, the "unfairness and the prejudice inquir[ies] merge here." *Id.*

Taveras's argument fails for two reasons. First, the Court has reviewed the issue of jurisdiction, above, and has found that there was jurisdiction. It follows that there was neither unfairness in, nor prejudice from, the immigration court's exercise of jurisdiction. Second, Taveras does not identify any other impediment to his removal. He does not, for example, dispute that his narcotics conviction supplied a lawful basis for removal, or claim that he had a viable defense to removal. Taveras has shown neither unfairness nor prejudice.

The Court therefore finds that Taveras has not established any, let alone all, of the three requirements of § 1326(d). For this independent reason, his motion to dismiss must be denied.

## CONCLUSION

For the foregoing reasons, the Court denies Taveras's motion to dismiss. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 24.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: December 2, 2020
         New York, New York